IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSICA GOSSETT, | § | |
| Plaintiff | § | |
| | § | |
| | § | CIVIL NO: 5:23-cv-01515 |
| -v- | § | |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Plaintiff Jessica Gossett and files Plaintiff's Original Complaint.

Plaintiff Jessica Gossett sues Defendant City of San Antonio for discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act, as amended. While employed by Defendant City of San Antonio, Plaintiff was an exemplary employee with a long history of stellar performance. Despite this, she was severely discriminated against for being a person with a disability. Plaintiff has been clinically diagnosed with depression, anxiety, ADHD, and autism.

Defendant did not provide Plaintiff with any support, and constantly bullied and verbally berated her. Defendant's actions and comments towards Plaintiff

indicated that that it did not believe in mental illness, dismissing Plaintiff's pleas. Her poor treatment drove her to tears on numerous occasions.

Plaintiff was also required to perform substantially more work than her nondisabled peers, including tasks outside the scope of her expected job duties. The nature of such tasks greatly exacerbated her mental illnesses, causing her significant physical and mental harm.

Plaintiff requested reasonable accommodations on numerous occasions. She constantly strived to work with Defendant to find solutions, proposing alternative schedule arrangements, staffing assignments and other standard accommodations for her disabilities. Defendant responded by retaliating against her: ramping up the bullying and harassment. Defendant ultimately terminated her employment for engaging in a protected activity and because of her disabilities.

## I. PARTIES

1. Plaintiff Jessica Gossett ("Ms. Gossett") is an individual currently residing in Bexar County, Texas.

2. Defendant, the City of San Antonio ("the City") is a municipal entity that is the seat of Bexar County, TX. Defendant may be served via Mayor Ron Nirenberg at 203 S. St. Mary's St., P.O. Box 839966, San Antonio, TX 78283.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint under 28 USC § 1331, these actions being brought under 42 USC § 12203, 42 USC § 12112 and 29 CFR § 1630.9.

4. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, these claims being so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

5. Venue is appropriate because the acts giving rise to this lawsuit occurred within the Western District of Texas.

### III. FACTS

6. On July 26, 2016, Ms. Gossett began working as a Master Teacher for the City in its Pre-K 4 SA program.

7. The Pre-K 4 SA program is an early childhood education program run by the City.

8. Throughout her tenure, Ms. Gossett always gave her best efforts to her employer and the students it serves. It was her intent to serve her employer until she retired.

9. As a result of her hard work and drive, Ms. Gossett was later promoted to Instructional Specialist.

10. Ms. Gossett has consistently excelled in her position. She has always received positive feedback and awards from her superiors. Her performance reviews exceeded expectations every year, and she had no disciplinary history until the events in controversy.

11. Ms. Gossett has the following disabilities: depression, anxiety, ADHD, and autism. She has been clinically diagnosed by a medical professional for each one.

12. During her employment she was always open about her disabilities. Her supervisors were fully aware that she suffered from depression, anxiety, and ADHD.

13. In July 2022, Tonda Brown (Ms. Brown), who served as Ms. Gossett's supervisor was promoted to Chief of School.

14. In August 2022, Ms. Gossett communicated to Ms. Brown that she would be attending therapy sessions and requested flexibility with her work schedule. At that time, Ms. Brown never mentioned the possibility of taking Family and Medical Leave.

15. In September 2022, Muya Hayes (Ms. Hayes) started as the Head of School of PreK 4 SA. Ms. Hayes displayed an utter disregard for Ms. Gossett's mental health and refused to effectively accommodate her disabilities.

16. For instance, sudden changes in the form of newly assigned tasks without notice in Ms. Gossett's work schedule significantly worsened her depression and anxiety, both conditions her supervisors knew about.

17. For instance, starting on September 25, 2022, just a few days after Ms. Hayes started, Ms. Gossett was suddenly required to hold open doors in the morning for students and parents. This was not an expected duty of her job and this interruption to her morning routine exacerbated her anxiety.

18. On September 27, 2022, Ms. Hayes called Ms. Gossett and another employee Aide Galvan to express her dismay that staff members sometimes took days off for the sake of their mental health.

19. Alarmed, Ms. Gossett informed Ms. Hayes that she was struggling with her mental health and that she attends weekly therapy sessions.

20. Ms. Hayes informed Ms. Gossett that she needs to put her problems aside and put the needs of others first.

21. On October 17, 2022, Ms. Hayes began requiring Ms. Gossett to serve as a substitute teacher, in addition to her regular job duties.

22. This goes beyond the scope of her agreed upon job duties. Thus, it in no way could be considered an essential job function.

23. She was given no accommodations or assistance despite being expected to balance the demanding duties of a substitute teacher in addition to her assigned job duties.

24. Due to her disabilities, Ms. Gossett requires a regular schedule otherwise she cannot function Therefore, this change caused Ms. Gossett considerable distress.

25. Despite other administrative staff being available and also holding teaching degrees, only Ms. Gossett was required to fill in as a substitute teacher.

26. For instance, Mrs. Aide Galvan, who was in the same position as Ms. Gossett, at the same campus, and had the same supervisors, was provided a reasonable accommodation to restrict her from serving as a substitute teacher despite Ms. Gossett's similar requests for accommodations being denied.

27. Ms. Gossett had to work late in the night and over the weekend to catch up on all her work. Having to do so worsened her mental health substantially.

28. On October 24, 2022, Ms. Gossett was once again required to step in as a substitute teacher, despite other admin staff being available.

29. Ms. Gossett requested a reasonable accommodation from Ms. Hayes to instead substitute in a different classroom with a teacher Ms. Gossett was actively coaching. The teacher's classroom assistant would then fill in the requested vacancy. This would address the City's needs to fill a staff shortage as well as accommodate Ms. Gossett's disabilities.

30. Ms. Hayes immediately rejected this request and refused to discuss accommodating Ms. Gossett at all.

31. At this point, Ms. Hayes had already informed Ms. Brown that she was aware Ms. Gossett was struggling with her mental health.

32. Ms. Hayes still required Ms. Gossett to fulfil the duties of a substitute teacher in addition to her other job duties that day, despite other admin staff being available.

33. That same day, Ms. Gossett expressed to Ms. Brown her need for reasonable accommodations.

34. Ms. Gossett specifically requested a transfer or job change that would provide her a more stable work schedule that would accommodate her disabilities.

35. The City never accommodated her, despite Ms. Brown informing her that things would get better. Ms. Brown never directed Ms. Gossett's concerns to HR nor made any sort of attempt to accommodate her.

36. On October 26, 2022, Ms. Gossett spoke with HR and notified them of her mental disabilities and expressed her dissatisfaction with her working conditions. HR did nothing to alleviate her concerns.

37. Ms. Gossett was then scheduled to meet with Ms. Brown on October 31, 2022, to discuss her "working plans", which Ms. Gossett interpreted as referring to her reasonable accommodations.

38. This meeting was cancelled at the last minute by Ms. Brown without informing Ms. Gossett in advance. Nevertheless, Ms. Gossett was able to briefly speak to her and requested a reasonable accommodation to be placed back in the classroom in lieu of her admin duties.

39. Ms. Brown refused to entertain her request.

40. During the same conversation, Ms. Brown informed Ms. Gossett that she suspected another Instructional Specialist, Mrs. Sarah Heinrich, ("Mrs. Heinrich"), was autistic. Ms. Brown then expressed a desire to demote or transfer Mrs. Heinrich to another position on the basis of her perceived disability.

41. Ms. Brown asked Ms. Heinrich to voluntarily move to a teaching position. Mrs. Heinrich refused, stating that it a was demotion and that she had no negative performance history to justify this move. Ms. Heinrich was ultimately transferred to a position created just for her where she no longer coached any teachers at all. None of the approximately twelve teachers were informed of this change.

42. Ms. Gossett received a calendar invite for another meeting on November 1 to discuss her "working plans", which much like the prior meeting never occurred.

43. On November 2, 2022, Ms. Gossett finally attended a meeting with Ms. Brown and Ms. Hayes where Ms. Gossett explicitly communicated that she has depression, anxiety, and ADHD.

44. Ms. Gossett proposed several reasonable accommodations. One of which was having her assist with staff shortages by filling in for Mrs. Joyce Holmes, clinic assistant. Mrs. Holmes would then fill in for the staff vacancy. This way she could assist the City with its understaffing issues while also filling in a staff position with flexibility and downtime. This would enable her to complete her job tasks throughout the day.

45. Ms. Gossett also proposed that she only substitute in specific classrooms that were within the scope of her job duties already.

46. Ms. Hayes and Ms. Brown rejected all of Ms. Gossett's suggested reasonable accommodations. Ms. Hayes called Ms. Gossett "selfish", "insubordinate", and dismissed her serious disabilities as mere temper tantrums.

47. At that time, Ms. Hayes informed Ms. Gossett that she had asked other staff to make statements against Ms. Gossett.

48. Ms. Gossett, utterly defeated, and with her mental health at its lowest, began to draft a letter of resignation during the meeting.

49. Ms. Gossett did not sign the resignation letter and did not intend to resign. Many employees who did not have disabilities had similarly drafted and submitted letters of resignation in attempts to get the City to talk to them about their needs. In those situations that involved individuals without disabilities, it worked as the City addressed the issues raised. Indeed, Ms. Brown never even submitted these signed letters of resignation to HR.

50. After Ms. Gossett wrote the letter, another employee, Jessica Alexander, placed the unsigned letter on Ms. Brown's desk.

51. On the evening of November 2, 2022, Ms. Brown messaged Ms. Gossett that her "resignation letter" required for signature for HR to consider it effective.

52. In response to the request to sign the letter, Ms. Gossett informed Ms. Brown that she would call HR to request that her FMLA be changed from intermittent to continuous along with short term disability leave. Ms. Gossett also stated that she would call in a few if Ms. Brown was available. Ms. Brown stated that she was on another call.

53. Ms. Brown never called or messaged Ms. Gossett about her FMLA and STD request ignoring never spoke to Ms. Gossett about her FMLA and STD request.

54. As noted above, it is regular practice that even a signed resignation letter addressed to Ms. Brown does not immediately terminate the employee-employer relationship. What usually happens with those who do not have disabilities and have not requested accommodations is Ms. Brown consults with staff upon receiving a resignation letter and has allowed several staff members to continue their employment after they submitted their own resignation letters.

55. The very next day, November 3, Ms. Gossett was locked out of the computer system.

56. Hours later, Ms. Brown sends an email stating that she has accepted Ms. Gossett's (unsigned) email. Again, there is no mention of Ms. Gossett's FMLA or STD request. Moreover, because Ms. Gossett had been locked out of her computer, she

could not even access that email. Obviously, Ms. Brown was trying to create a paper trail.

57. Despite the City's policy of promptly notifying employees that their resignation was accepted, Ms. Gossett was given no such communication before locking Ms. Gossett out of her account.

58. For the next three days, Ms. Gossett made repeated attempts to contact her supervisors and HR regarding the status of her employment and FMLA requests.

59. It was not until November 5, 2022, when Ms. Gossett was finally able to get in touch with her HR contact Ms. Melody Haines to inquire as to what was going on.

60. Ms. Haines communicated to Ms. Gossett that she had no record of her resignation in her system and that she would figure out what was going on.

61. Neither Ms. Haines, nor anybody else, ever got back to Ms. Gossett about the status of her FMLA claim and her rescinded resignation.

62. In fact, it was not until the next week that the City reinstated her access just so that Ms. Gossett to receive a second email stating that her (unsigned) resignation was accepted and that she would not be allowed to work the two-week notice period.

63. On November 5, 2022, in a significant deviation from regular practice regarding resignations, HR instructed employees Mrs. Jessica Alexander and Mrs. Monica Gonzalez to make statements about the terms of Ms. Gossett's alleged resignation letter and say that she resigned. They were told not to talk to Ms. Gossett upon threat of losing their own jobs. were not allowed to communicate with her anymore.

64. Ms. Gossett continued to receive salary payments from the City until mid-November.

65. Ms. Gossett did not resign but was fired.

66. On February 28, 2023, Ms. Gossett dual-filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission.

67. The EEOC issued a right to sue on September 20, 2023 and more than 180 days have passed since the charge was filed with the Texas Workforce Commission.

68. All conditions precedent to the bringing of this suit have been met.

### IV. FIRST CAUSE OF ACTION: VIOLATION OF TEXAS LABOR CODE

69. Ms. Gossett incorporates paragraphs 1-68 as if restated herein.

70. Ms. Gossett has exhausted all available administrative remedies having filed a claim with the Texas Work Force Commission Civil Rights Division on February 28, 2023. Since over 180 days have elapsed, she is entitled to her Right to Sue, which exhausts her administrative remedies.

71. Ms. Gossett has a disability as defined by the Texas Labor Code, as she has been clinically diagnosed with depression, anxiety, ADHD, and autism by a trained medical professional. These conditions limit one or more major life activities, including but not limited to communicating and interacting with others.

72. Ms. Gossett is qualified for her job, having successfully worked in education for the City for years without incident. She received several awards and praise from her supervisors for her work.

73. Ms. Gossett suffered adverse employment actions because of her disability, as the City refused to provide reasonable accommodations and instead terminated her employment for requesting them.

74. The City additionally required her to perform work outside the scope of her regular job duties, knowing that this would exacerbate the negative effects of her disabilities.

## V. SECOND CAUSE OF ACTION: VIOLATION OF TEXAS LABOR CODE ANTI-RETALIATION PROVISION

75. Ms. Gossett incorporates paragraphs 1-74 as if restated herein.

76. Ms. Gossett has exhausted all available administrative remedies having filed a claim with the Texas Work Force Commission Civil Rights Division on February 28, 2023. Since over 180 days have elapsed, she is entitled to her Right to Sue, which exhausts administrative remedies.

77. Ms. Gossett engaged in a protected activity in requesting her reasonable accommodation. She alerted the City to her reasonable belief that unlawful discrimination on account of her disability was at issue.

78. The City was aware of Ms. Gossett's opposition to its discriminatory practices towards her.

79. Ms. Gossett suffered adverse employment actions because of her disability, as the City refused to provide reasonable accommodations and instead terminated her employment for requesting them.

80. The City additionally required her to perform work outside the scope of her regular job duties, knowing that this would exacerbate the negative effects of her disabilities.

81. Ultimately, the City terminated Ms. Gossett because of her engagement in protected activity causing her substantial harm.

### VI. THIRD CAUSE OF ACTION: FAILURE TO ACCOMMODATE UNDER THE ADA

82. Ms. Gossett incorporates paragraphs 1-81 as if restated herein.

83. Ms. Gossett has exhausted all available administrative remedies having received the Right to Sue from the Equal Employment Opportunity Commission on September 20, 2023.

84. Ms. Gossett has a disability as defined by the Americans with Disabilities Act, as she has been clinically diagnosed with depression, anxiety, ADHD, and autism by a trained medical professional.

85. As described above, Ms. Gossett made several requests for reasonable accommodations in requesting she perform her work in a manner that would not exacerbate her disabilities.

86. Ms. Gossett went out of her way to devise accommodations that would not create an undue burden on the City. They are not an undue burden because they would help the City with its excess workload due to understaffing and would actually benefit the City.

87. The City failed to provide a reasonable accommodation to Ms. Gossett.

# VII. FOURTH CAUSE OF ACTION: DISABILITY DISCRIMINATION UNDER THE ADA

88. Ms. Gossett incorporates paragraphs 1-87 as if restated herein.

89. Ms. Gossett has exhausted all available administrative remedies having received the Right to Sue from the Equal Employment Opportunity Commission on September 20, 2023.

90. Ms. Gossett has a disability as defined by the Americans with Disabilities Act, as she has been clinically diagnosed with depression, anxiety, ADHD, and autism by a trained medical professional.

91. Ms. Gossett was qualified for her job, having successfully worked in education for the City for years without incident. She received several awards and praise from her supervisors for her work.

92. Ms. Gossett suffered adverse employment actions because of her disability, as the City refused to provide reasonable accommodations and instead terminated her employment for requesting them.

93. The City additionally required her to perform work outside the scope of her regular job duties, knowing that this would exacerbate the negative effects of her disabilities.

94. Thus, the City has violated the law.

## VIII. FIFTH CAUSE OF ACTION: RETALIATION UNDER THE ADA

95. Ms. Gossett incorporates paragraphs 1-94 as if restated herein.

96. Ms. Gossett has exhausted all available administrative remedies having received the Right to Sue from the Equal Employment Opportunity Commission on September 20, 2023.

97. Ms. Gossett in an employee as defined by the Americans with Disabilities Act.

98. The City is an employer as defined by the Americans with Disabilities Act, it is engaged in activities affecting commerce and has fifteen or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

99. Ms. Gossett was qualified for her position at the time she was instructed to perform duties that would exacerbate her disabilities and when her employment with the City was terminated.

100. Ms. Gossett engaged in a protected activity when she complained of discrimination on the basis of her disabilities and when she made requests for reasonable accommodation.

101. Ms. Gossett suffered an adverse employment action when she, among other things, was terminated.

102. The City violated the ADAAA's anti-retaliation provision when it intentionally terminated Plaintiff because of her engagement in protected activity.

## IX. JURY DEMAND

103. Ms. Gossett demands trial by jury.

## X. DAMAGES

104. Ms. Gossett seeks all damages allowed under the law, including monetary relief like back pay, benefits, lost wages and:

(a) Ms. Gossett seeks additional equitable relief as may be appropriate such as childcare, reinstatement, promotion, front pay, and court costs.

(b) Ms. Gossett seeks compensatory damages for past and future nonpecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and medical expenses.

(c) Ms. Gossett seeks reasonable attorney's fees and costs including reasonable expert fees.

(d) Ms. Gossett seeks pre and post judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Ms. Gossett respectfully prays that the City be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Ms. Gossett, and for such other and further relief to which Ms. Gossett is justly entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: /s/ Colin Walsh
Colin Walsh
Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*
WILEY WALSH, P.C.
1011 San Jacinto Blvd., ste 401
Austin, TX 78701
Telephone: (512) 271-5527
Facsimile: (512) 201-1263
Colin@WileyWalsh.com
Texas Bar No. 24079538
ATTORNEY FOR PLAINTIFF